In re DOYLE.

In re NEUN.

(Circuit Court of Appeals, Second Circuit. January 12, 1915.)

No. 10–160.

1. BANKRUPTCY ☞376—COMPROMISE OF CLAIMS.

At the time of a person's bankruptcy certain corporate stock stood in his name on the books of the corporation; but he claimed to have transferred it to his wife, and, apparently having been·transferred in blank, it was held by a trust company as collateral to a loan to B., a friend of the bankrupt. The wife filed a claim for $76,000, and the trustee commenced an action to recover the stock as the property of the bankrupt, offering to pay the indebtedness to the trust company. The bankrupt applied for a discharge, which was denied; the special master and the District Judge sustaining objections based on the transfer of the stock and other property. Pending an application for a rehearing, B. proposed a compromise by which he was to pay the trustee $40,000, the wife was to withdraw her claim, the trustee was to discontinue the action to recover the stock, the settlement was to be approved by a majority of the creditors, and objections to the bankrupt's discharge were to be withdrawn. This was approved by a majority of the creditors voting thereon and by the District Court, and was carried out, except that the objections to the discharge were not withdrawn. On rehearing of such objections they were overruled. *Held*, that the proposed compromise appeared proper, and there was no error in approving it.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 598–600, 602; Dec. Dig. ☞376.]

2. BANKRUPTCY ☞457—REVIEW OF PROCEEDINGS—MATTERS PRESENTED FOR REVIEW.

The overruling of the objections to the discharge would not be reviewed, on appeal, until the District Court amended its order to show whether such objections were overruled under the impression that the proposed settlement had been fully carried out, and that further consideration of the objections was unnecessary or because, on reconsideration the court believed the evidence did not support the objections.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 917; Dec. Dig. ☞457.]

3. BANKRUPTCY ☞460—REVIEW OF PROCEEDINGS—EFFECT OF COMPROMISE.

An objecting creditor, who has filed specifications against a bankrupt's discharge and has not withdrawn them, is entitled to be heard with respect to the granting of a discharge on appeal, and his rights cannot be prejudiced by the vote of a majority of the other creditors to accept a proposed compromise of conflicting claims.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 919; Dec. Dig. ☞460.

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

**4.** BANKRUPTCY ⊚⟹386—COMPROMISE OF CLAIMS—FAILURE TO CARRY OUT—RESTORATION.

Where, pursuant to a proposed compromise of a controversy over stock, which a bankrupt claimed to have transferred to his wife, under which $40,000 was to be paid to the trustee, the wife was to withdraw a claim against the estate, the trustee to discontinue an action to recover the stock, and creditors to withdraw their objections to the bankrupt's discharge, the payment was made, and the wife's claim released in reliance on the trustee, or the person who proposed the compromise, being able to secure the withdrawal of the objections to the discharge, but such objections were not withdrawn, equity required that such payment and release should be returned.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 606; Dec. Dig. ⊚⟹386.]

Petition to Revise and Appeal from Orders of the District Court of the United States for the Western District of New York.

This cause comes here in two aspects: First, on petition to revise an order of the District Court, Western District of New York, approving a proposed compromise; and, second, on appeal from an order granting bankrupt's discharge.

See, also, 199 Fed. 247.

W. F. Lynn, of Rochester, N. Y., for petitioner and appellant.

H. W. Rippey and W. W. Armstrong, both of Rochester, N. Y., for appellees.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. **[1, 2]** At the time of the bankruptcy, August 7, 1908, 275 shares of the stock of the Mohawk Condensed Milk Company stood in bankrupt's name on the books of the company. Bankrupt contends that these were conveyed to his wife by written assignments dated December 24, 1897 (270 shares), and January 6, 1908 (5 shares). There was conflicting evidence as to the authenticity of these assignments. Apparently the certificates of stock had been transferred in blank, because prior to August 8, 1908, they had been deposited with the Genesee Valley Trust Company as collateral to a loan of about $47,000 to Robert A. Badger, a friend of the bankrupt, who was endeavoring to assist him in his financial difficulties. It does not seem to be disputed by any one that the value of the stock greatly exceeds the sum for which it was pledged as collateral. Mrs. Doyle, the bankrupt's wife, filed a claim against his estate for upwards of $76,000. The bankrupt made application for discharge (July 5, 1909), to which specifications of objections were filed. Subsequent to bankruptcy the Milk Company increased its stock and 68 shares were allotted to Badger as holder of the 243 shares. Badger borrowed $10,200 additional from the Trust Company to pay for them, pledging the 68 shares as collateral. Still later the Milk Company declared a stock dividend, of which 343 shares was received by Badger as holder of the other 343 (275 plus 68) and turned over to the Trust Company as collateral to its loans.

On October 7, 1912, the trustee commenced an action in the Supreme Court of the state against the Trust Company to recover the 686 shares

of stock, claiming that it was property of the bankrupt and offering to pay the indebtedness to the Trust Company. The special master, to whom the matter had been referred, reported against discharge on February 21, 1912. Upon application for review in the District Court, Judge Hazel filed an opinion sustaining the special master as to two of the specifications and refusing discharge on September 12, 1912. Before order was entered on such opinion, application was made on affidavits for a rehearing. Subsequent to September 12, 1912, and before rehearing was ordered on August 26, 1913, the proposed compromise was prepared and submitted at a meeting of the creditors. The special master reported that 44 claimants did not vote at all, although some of them were present; that of those who voted 26 favored the compromise, and 11 rejected it; that "the amount of money represented by those in favor of the compromise is far in excess, several times the amount of money represented by those who were present and voted 'no,' and the number who voted 'yes' also exceeds in amount the number who have failed to vote, with the exclusion of Mrs. Doyle."

The proposed compromise, which the District Judge approved, provided as follows:

(1) Badger, who proposed the compromise, for the expressed reason that he was "desirous of compromising and settling the trustee's action and procuring the discharge of the bankrupt and the distribution of his bankrupt estate," was to pay the trustee $40,000 in cash.

(2) Mrs. Doyle was to withdraw her claim against the estate and execute all necessary releases thereof.

(3) The trustee was to discontinue the action to recover the stock which Mrs. Doyle claimed she owned.

(4) There should be an approval of the proposed settlement by a majority of the creditors.

(5) Such creditors as have heretofore filed objections to the discharge of said Michael Doyle shall waive and withdraw the same, and no further objection to his discharge shall be made.

This seems to us an entirely proper adjustment, if it can be carried out in its entirety, and we find no error in the court's approval.

The appeal from the order of discharge presents a more complicated situation. There were specifications of objections to discharge filed by various creditors, who, as the special master states, "represented more than half of the valid claims filed, with the exception of the claim of the bankrupt's wife." There were six different specifications of objection, and the special master sustained them all. The District Court reversed the master as to all except Nos. 4 and 5, as to which on September 13, 1912, it sustained him. These specifications dealt with two alleged assignments of property, the Milk stock being one of them. The master discussed the testimony at considerable length, and so did the court, which gave its reasons for holding upon the facts proved that the averments of objectors had been proved.

Subsequent to decision, and before order was signed, the court granted an order to show cause why there should not be a rehearing. On the return day, the proposed settlement being before the court, a rehearing was ordered upon condition that the action by the trustee to recover the stock be compromised and settled upon the terms and

conditions "hereinafter stated"; such statement enumerating all the provisions of the proposed settlement, except No. 5.

Upon the rehearing there was presented a petition showing that the "trustee has received said money and said papers"—i. e., the $40,000 and release of Mrs. Doyle's claim—provided for in clauses 1 and 2. It also appeared that a large majority of the creditors had voted approval of the proposed settlement. Thereupon the court made an order overruling all objections to the discharge and granting the same.

It appears that the proposed settlement was not carried out according to its terms. Clauses 1, 2, 3, and 4 were carried out, but 5 was not. No creditor, who had filed objections to discharge, withdrew them. From the language of the orders granting rehearing and granting discharge, it might be inferred that the court was under the impression that the proposed settlement had been fully carried out. If it had been, further consideration of the objections would, of course, be unnecessary, there would be none left to consider, and an order of discharge would be proper. It is, of course, possible that the court made its order, not because it supposed the proposed settlement had been fully carried out, but because upon reconsideration of the evidence before the special master it was satisfied that the stock in question did not belong to the bankrupt. If the former of these postulates be correct, the order should be reversed, for there certainly was evidence, referred to in Judge Hazel's opinion, to sustain the original finding of the master and the court that the stock was the property of the bankrupt, and the record shows that objections were not withdrawn, as clause 5 of the compromise assumed they would be.

[3] If the other postulate be correct, then this court should examine the testimony to see if the court was in error in reversing the master's findings as to this specification (and also specification 5). But we should not be required to make this examination until we are advised whether the master and the court are in accord or not as to the merits of these specifications. An objecting creditor, who has filed specifications against discharge and not withdrawn them, is entitled to be heard here on their merits. His rights cannot be prejudiced, on that branch of the case, by the vote of a majority of the other creditors expressing satisfaction with a proposed compromise of conflicting claims.

[4] The case is further complicated by the circumstance that the bankrupt and his wife, who claims to own the stock, have never received the full consideration they bargained for when they agreed to the proposed settlement. It is hardly to be assumed that they would have procured a payment of $40,000 cash to the trustee and released the wife's claim, if they still had to persuade the court that specifications of objections to discharge were unsound. If, contrary to the provisions of clause 5, they have to make that fight here, equity requires that the cash and releases they turned over in reliance on the trustee or Badger being able to secure performance of clause 5 should be returned; the trustee's suit being reinstated.

The order is reversed, and the cause remanded to the District Court, with instructions to amend its order by inserting findings whether or

not the specifications of objections Nos. 4 and 5 are sustained by the proofs, and then to make such order touching petition for discharge as it may be advised. When this is done, the precise question to be decided here will be presented, without the uncertainty which now obscures it.